William R. Watson v. Commissioner.
Watson v. Commissioner
Docket No. 11305.
United States Tax Court
1947 Tax Ct. Memo LEXIS 161; 6 T.C.M. (CCH) 772; T.C.M. (RIA) 47181; June 27, 1947
Thomas F. Boyle, Esq., 25 Broad St., New York, N.Y., and Charles S. Whitman, Jr., Esq., for the petitioner. William A. Schmitt, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This case involves income taxes for the calendar year 1941 in the amount of $4,177.62, in which amount deficiency was determined. The question presented is whether a loss suffered by the petitioner is ordinary or capital. The facts were largely, but not entirely stipulated. We find the facts as stipulated, incorporating them, so far as considered material, in our Findings of Fact 1. The petitioner resides in Connecticut, but has his principal place of business in New York City. He filed his Federal income tax return for the *162 taxable year with the collector for the second district of New York. 2. Trust No. 19610 of the Chicago Title and Trust Company, Chicago, Illinois, known as "Carlyle Park Syndicate," was created by an instrument of trust dated November 9, 1927, a copy of which is attached to the stipulation. 3. On or about November 9, 1927, Ray B. Dixon and Mary B. Dixon, Frank M. Lowe and Vernet J. Lowe, James B. Dixon and May B. Dixon entered upon a joint venture by transferring certain parcels of real estate comprising 414 acres situated in Wisconsin, subject to an existing mortgage indebtedness of $62,500 to the trustees for Trust No. 19610. The deeds in trust transferring the real estate to the trustees were recorded in Racine County and Milwaukee County, Wisconsin, where the properties were located. 4. Frank M. Lowe was an attorney and real estate operator in Chicago, Illinois, from 1922 to his death and was a former president of the Chicago Real Estate Board. 5. Ray B. Dixon was a partner of James A. Reeves in the real estate firm of Reeves & Dixon, Waukegan, Illinois. The business of that firm since its organization in 1926 has been the purchase, sale, leasing and management of real *163 estate. 6. Beginning in 1927 and thereafter, the real estate was offered for sale and efforts were made to find purchasers therefor, but without success. No sales of the property were actually consummated. 7. Judgment of foreclosure was entered against Frank M. Lowe and Vernet J. Lowe and the trustees for Trust No. 19610 on October 17, 1939. The sheriff sold the property pursuant to the judgment of January 6, 1941, and the sale was confirmed by the Circuit Court of Milwaukee County, Wisconsin, on January 23, 1941. 8. No certificates of beneficial interest were ever issued to the beneficiaries of the trust. 9. Petitioner acquired by assignment dated January 24, 1930, an undivided 1/24th beneficial interest in and to the Trust No. 19610, subject to all the provisions thereof, from Frank M. Lowe for $6,104.17. A duplicate of the assignment was filed with the trustees on that date. 10. Petitioner acquired an additional 1/24th interest in and to the Trust No. 19610, subject to all of the provisions thereof from James A. Reeves by assignment dated February 9, 1932, in exchange for 40 acres of real estate situated in Antioch, Illinois (subject to a mortgage of $1,500), and $1,250 *164 in cash. A duplicate of the assignment was filed with the trustees on February 17, 1932. Petitioner had acquired the Antioch real estate for $4,750 on January 24, 1928, paying $2,500 in cash and assuming a mortgage thereon of $2,250. Thereafter the mortgage was reduced to $1,500 on October 18, 1930, by the payment of $750. Petitioner purchased his interests at cost to the original purchasers. 11. The trust agreement, attached to the stipulation, and so far as considered material, provided as follows: That Abel Davis, Henry J. Tansley, and Holman D. Pettibone, and their successors in trust, are about to take title to certain described real estate; that after taking title thereto, or to any real estate deeded to them as trustees, they will hold it in trust, the earnings, avails and proceeds to belong 8/24ths to Ernest T. Gundlach, 6/24ths to Frank M. Lowe, 5/24ths to James A. Reeves, and 5/24ths to Ray B. Dixon, such being their respective interests; that the interest of a beneficiary shall consist solely of a power of direction to deal with the title and to manage and control the property and receive the proceeds from rental, mortgage, sale, or other disposition thereof, such right *165 to be deemed personal property to be assigned and transferred as such, and to pass upon death to executors or administrators, and not to heirs, and no beneficiary to have any right, legal or equitable, title or interest in the real estate as such, but only to its proceeds, avails and earnings; that death of a beneficiary shall not affect trustees' powers, and no assignment shall be binding upon a trustee until lodged by original or duplicate copy with the trustees; that in case the trustees or any of them advance, or are compelled to pay any money, or are sued, because of the trust, the beneficiaries will, on demand, repay them with interest and expenses, the trustees until such repayment not being required to convey or deal with the property, such trustees, however, not being required to advance or pay out money or prosecute or defend litigation until furnished sufficient funds or satisfactory indemnity; that the trust instrument shall not be placed of record; that the trustees will deal with the property when authorized in writing, but only then, and shall not be required to enter personal liability; that a purchaser of the property need not see to the application of the purchase *166 money, or inquire into the necessity or expediency of trustees' acts, or the provisions of the trust instrument; that the beneficiaries shall manage and control the renting or disposition of the property, the trustees not being required to manage, contract, insure, pay taxes, or litigate, except upon written direction, and after payment to them of any necessary money; that no beneficiary may contract for, or in the name of, or bind the trustees personally; that any property remaining in the trust after 20 years shall be sold at public sale by the trustees on reasonable notice, and the proceeds divided; that the trustees for their services shall receive certain specified fees. The instrument was executed by the trustees and beneficiaries named. 12. The petitioner is president of, and for 42 years has been associated with, the Corporation Trust Co.; also for about 22 years has been the director and member of the executive committee of Commerce Clearing House. His activities were primarily in Chicago for about 20 years prior to 1936, when he came to New York. In Chicago he was vice president of Corporation Trust Co., and manager of that territory. His work there was, from Corporation *167 Trust Co's standpoint, organization of corporations, working with lawyers and financial interests, and general corporate and financial activities. Years ago he became acquainted with one Lowe, a lawyer and large operator in real estate properties in Chicago and vicinity. He was for years consulted by Lowe on financial matters. Lowe induced him to participate in the Carlyle Park Syndicate venture. Lowe, Reeves, and Dixon, three of the participants, were general real estate agents and developers, very active in buying and selling real estate. They had participated extensively in development and subdivision of other property, such as that owned by the Carlyle Park Syndicate, including North Shore and property west of the North Shore property, and in estates and in subdivisions, industrially and otherwise. The Carlyle Park Syndicate property is located above Racine, Wisconsin, about 15 miles from the center of Milwaukee, and about 85 miles from Chicago. The petitioner was consulted by the other members of the venture on matters of finance pertaining to the syndicate. That was his reason for being in the matter. The foreclosure and sale in 1941 covered all of the property, leaving no assets *168 in the trust. 13. The petitioner's income during 1941 was derived practically altogether from compensation from the trust companies of which he was an officer. He received no income from real estate business operations, and has received none since his original connection with the trust company. The property is undeveloped acreage, about 400 acres, with a railroad through a part and another nearby. It was not subdivided. The petitioner and his associates made no improvements, did no subdividing, or planning or laying out roads. None of it was sold during his participation, and none was rented, except that a Pole was allowed to occupy a little farm on one part. The trust received no rent from him. Those who later were associated with petitioner in the venture had had an opportunity to sell at a profit, prior to 1929. This property is the only property in Wisconsin in which petitioner knew his associates to be interested. He never personally offered the property for sale. That was not his job, his part being to help in any financial arrangements required in developing for sale. The principal object of the parties was to dispose of the property as a whole; that is where the chief value *169 lay. Petitioner had made no other such investments. The venture was to dispose of the property, "a frozen asset." General business conditions prevailing from 1929 and "almost through the 30's" may have prevented. 14. The parties stipulated, and we find, that the petitioner's actual loss was $10,604.17. Opinion Did the petitioner hold the property above described "primarily for sale to customers in the ordinary course of his trade or business," within the language of section 117 (a) of the Internal Revenue Code? The burden is upon him to overcome the correctness of the deficiency determined upon the ground that the loss was a capital loss, subject to the limitations prescribed in section 117. We consider it clear that such burden has not been met. We may assume, as the petitioner argues, citing various authorities, that it was not necessary for him as a joint venturer, to engage personally in efforts to sell the property. Nevertheless, we think holding primarily for sale to customers in ordinary course of business is not shown. The trust instrument, under which the property was held, fails completely to designate the object of the holding. It does not provide *170 for subdivision or improvement of the property, or indicate that there was any intent so to do, or negative mere holding for investment or other purpose. The petitioner testified that Lowe's "investment" had occurred years before. Though there is evidence that some of the joint venturers (unlike the petitioner) were in the real estate business, Lowe being a real estate operator, and Ray B. Dixon being a partner in a real estate firm engaged in the "purchase, sale, leasing, and management of real estate," obviously this is no sufficient proof that the particular real estate here involved was held within the meaning of the above-quoted language of section 117. They may have so held other property, yet held this with no such intent. Though we do not regard successful efforts to sell as essential, if evidence indicates some reason for lack of sales, such as a depression in the business, nevertheless the holding of this property from 1927 until foreclosure of mortgage upon it in 1939-1941, with no showing whatever of any development, must realistically be seen as indicative of investment, rather than the holding required by section 117. Though efforts were made to sell the land, the evidence *171 is vague and uncertain as to what effort was made. The petitioner as a witness, asked what attempts were made, answered: "I would say numerous attempts and continuously. * * * And continuous." Yet, he remembers only one negotiation where "I had any familiarity with it. That was a - was purported to be an offer for interest in the property by the Catholic Bishop in Milwaukee * * *." Yet later he says that other attempts "were matters arising with more or less frequency." Still later, asked whether the property was continuously offered for sale by the syndicate members who were active real estate brokers, his answer was: "I would assume so and i certainly believe so, because they were in the business to dispose of it, of a frozen asset." We are, from these various statements, not convinced that the petitioner, who was the only witness (in addition to the stipulation) really knew what efforts were made to sell the property. No part whatever was, at any time sold, and the petitioner testified that the "principal object was to dispose of it as a whole." Obviously, we think, in the light of the record before us, we can not say that this property was held primarily, in the ordinary course *172 of his trade or business (either of the petitioner or his associates) for sale to customers, as opposed to mere holding for investment or otherwise. Nothing of record negatives the latter, and such was the determination in arriving at the deficiency. The petitioner went into a joint venture, but its nature we can not determine from the record made. The property was not used, except for occupancy of a small part by one who paid no rent. Its treatment bears none of the marks of ordinary development of real estate sites or subdivisions. The cases cited offer no help on these facts. We hold that the petitioner has failed to show error on the part of the Commissioner. Decision will be entered for the respondent.